**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                                                                 *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARINA LAZAROVA,** | : | Civil Action No. |
| 1005 Sleepy Hollow Road | : | |
| Clarks Summit, PA 18411 | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Complaint and Jury Demand |
| | : | |
| **GEISINGER COMMONWEALTH** | : | |
| **SCHOOL OF MEDICINE,** | : | |
| 521 Pine Street | : | |
| Scranton, PA 18509 | : | |
| Defendant. | : | |

**CIVIL ACTION**

Plaintiff, Darina Lazarova (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Geisinger Commonwealth School of Medicine (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), the Family and Medical Leave Act of 1993, as amended ("FMLA"), breach of contract and detrimental reliance. In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Defendant Geisinger Commonwealth School of Medicine is a private medical school with a location and corporate headquarters at 521 Pine Street, Scranton, PA 18509.

4. Defendant is an entity engaged in an industry or activity affecting commerce which employs 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweeks in the current or preceding year relevant to the matter at issue.

5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise

of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the Middle District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Plaintiff exhausted her administrative remedies under the ADA and the PHRA.

15. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on March 27, 2024, alleging disability discrimination and retaliation against Defendant.

16. The Charge was assigned a Charge Number 530-2024-07080 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request

relative to the Charge and that Notice is dated November 18, 2024.

18. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

19. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two years of the issuance of the Right to Sue in this matter as it relates to her PHRA claims.

20. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

22. In or around September 2008, Defendant hired Plaintiff in the position of Assistant Professor of Molecular and Cellular Biology.

23. Plaintiff was well qualified for her position and performed well.

24. In or around April 2015, Plaintiff filed a harassment complaint with Defendant against Dr. John Arnott.

25. Specifically, during a faculty meeting organized by the Department Chair at that time, Plaintiff expressed her ideas on improving the grant funding process, related to the new rules of internal grants at Defendant.

26. Dr. Arnott publicly ridiculed Plaintiff, stating that Plaintiff's questions regarding the grant funding process were signs of "negativism".

27. Dr. Arnott called Plaintiff a "complainer", stating she created a negative image at Defendant or words to that effect.

28. Dr. Arnott stated that "if [Plaintiff] did not like it at [Defendant], she could leave" and "[Plaintiff] should simply be grateful that [she] was still receiving a salary from [Defendant]", or words to that effect.

29. Defendant stated that the complaint was resolved internally but Defendant did not properly address and correct Dr. Arnott's conduct.

30. In or around 2018, Dr. Arnott received a promotion to Department Chair and became Plaintiff's direct supervisor.

31. In or around early May 2023, Plaintiff's elderly mother fell and could not get up.

32. Plaintiff's mother likely suffered a stroke.

33. As such, Plaintiff's mother is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff's mother has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities, including breathing, or because Plaintiff's mother had a record of such an impairment or because Plaintiff's mother was regarded as and/or perceived by Defendant and its agents as being disabled.

34. Importantly, Plaintiff is Bulgarian by birth and her mother still lives in Bulgaria.

35. For two (2) months, Plaintiff hired caregivers for her mother, however it became evident that Plaintiff's mother needed more constant and direct care than the caregivers could provide.

36. All of the assisted living arrangements Plaintiff made did not last.

37. As a result, on or about June 26, 2023, Plaintiff informed Dr. Arnott and Dr. Julie Byerley, President, of her mother's disability.

38. Plaintiff requested an extended unpaid leave to go to Bulgaria to care for her mother until she could find permanent assistance for her mother.

39. Plaintiff stated that she would finish out her current teaching obligations and requested that her leave start in October 2023, following the summer school term.

40. Per the 2023 Faculty Handbook, Defendant's policies for extended leave without pay allowed Plaintiff to take off over six (6) months, but Plaintiff stated that she intended to return to work sooner, assuming she was able to find permanent care for her mother.

41. Plaintiff also requested the extended unpaid leave through Human Resources.

42. Human Resources asked Plaintiff to consider applying for FMLA leave.

43. However, Plaintiff could not apply for FMLA leave.

44. Importantly, Plaintiff's mother could not see a doctor as she would need Plaintiff to take her to a doctor in Bulgaria and have the doctor's statement be translated and notarized.

45. Therefore, Plaintiff would not be able to complete the required FMLA leave paperwork.

46. Additionally, Plaintiff was unsure if she would need longer than the twelve (12) week period of leave that the FMLA permits.

47. Plaintiff expressed this to Human Resources.

48. Ultimately, Human Resources permitted Plaintiff to take an unpaid extended leave per its policies in the Faculty Bylaws Handbook.

49. Before leaving for Bulgaria in September 2023, Plaintiff met with Dr. Arnott.

50. Dr. Arnott stated that he would not schedule Plaintiff for any teaching obligations until July 2024.

51. Plaintiff stated that she would certainly be able to return before July 2024, which would all her plenty of time to prepare to teach by July 2024.

52. Plaintiff left on an extended unpaid leave to care for her mother.

53. In or around December 2023, Plaintiff found permanent care for her mother.

54. On or about December 12, 2023, Plaintiff contacted Dr. Arnott via email to discuss her return to work at Defendant.

55. Plaintiff did not hear back from Dr. Arnott for approximately one (1) month and contacted Human Resources (multiple times) and Dr. Arnott's secretaries requesting a response from Dr. Arnott.

56. On or about January 15, 2024, Dr. Arnott responded to Plaintiff via email.

57. Robert Konopke, Human Resources Business Partner, was CC'ed on this email.

58. Dr. Arnott stated that Plaintiff's position would be terminated at the end of her leave in May 2024.

59. Dr. Arnott cited Geisinger Health's policies, which state that if an employee takes an unpaid leave of absence for over forty-five (45) days, it is up to supervisor's discretion to terminate an employee at the end of the leave.

60. The Geisinger Health policy was sent to Plaintiff before her leave via email.

61. However, Plaintiff requested a leave of absence based on the 2023 Faculty Handbook, as Plaintiff is employed by Defendant, Geisinger Commonwealth of Medicine, and not by Geisinger Health directly.

62. Nonetheless, Konopkeinsisted that Plaintiff fell under Geisinger Health's policies, like a nurse or janitor in Geisinger Health's healthcare facilities would.

63. Plaintiff actually fell under the bylaws of the Faculty Handbook for Defendant, Geisinger Commonwealth School of Medicine, which she used to take her extended paid leave.

64. Konopke stated via email that Plaintiff would remain in leave status until May 2024 when her position would be terminated.

65. Konopke stated that Plaintiff could apply to internal positions at Defendant before May 2024.

66. Despite this contention, Defendant blocked Plaintiff from her work email address at Defendant during her leave, thereby inhibiting her ability to apply for internal positions.

67. Plaintiff also could not continue to write recommendations for her students due to her blocked email address.

68. Plaintiff complained about her inability to apply for internal positions to Konopke via email.

69. Konopke responded that Plaintiff could apply externally and that Defendant would inform the recruiters that Plaintiff was an internal hire.

70. Plaintiff attempted to do this.

71. However, the recruiters informed her that she did not follow proper protocol for an internal hire and must apply with her work email; the email Defendant locked her out of.

72. Plaintiff continued to attempt to gain access to internal hiring within Defendant without success.

73. Konopke had informed Plaintiff that she can resign prior to May 2024 or wait to be terminated in May 2024, or words to that effect.

74. In or around February 2024, Plaintiff filed an internal ethics complaint about not being able to apply for positions at Defendant.

75. On or about February 19, 2024, left with no other choice, Plaintiff submitted her resignation.

76. Plaintiff was constructively discharged.

77. Defendant did not resolve Plaintiff's complaint until after she resigned from Defendant.

78. Defendant discriminated against Plaintiff by association to her mother's disability and retaliated against Plaintiff for taking an extended leave of absence related to her mother's disability in violation of the ADA and the PHRA.

79. Defendant interfered with Plaintiff's FMLA leave and retaliated against her for attempting to utilize her rights under the FMLA in violation of the FMLA.

80. Defendant breached its employment contract with Plaintiff regarding her leave of absence.

81. In addition, Plaintiff detrimentally relied upon Defendant's promise that she would be able to return to her teaching duties in July 2024, following her leave of absence to provide care for her disabled mother.

82. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

### COUNT I – ASSOCIATIONAL DISABILITY DISCRIMINATION
### AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

83. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

84. Plaintiff was associated with a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff's mother has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff's mother had a record of such an impairment or because Plaintiff's mother was regarded as and/or perceived by Defendant and its agents as being disabled.

85. Plaintiff was qualified to perform the job.

86. Plaintiff was subject to an adverse employment action, including, but not limited to

9

constructive discharge.

87. Circumstances indicated that Plaintiff's association with her disabled mother was the reason for the adverse employment action.

88. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment action.

89. Plaintiff's association with her disabled mother motivated Defendant's decision to take adverse actions against Plaintiff.

90. The purported reason for Defendant's decision is pretextual.

91. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

92. As a result of Defendant's unlawful associational disability discrimination, Plaintiff has suffered damages as set forth herein.

93. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT II – ASSOCIATIONAL DISABILITY DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT

94. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

95. Plaintiff was associated with a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff's mother has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff's mother had a record of such an impairment or because Plaintiff's mother was regarded as and/or perceived by Defendant and its agents as being disabled.

96. Plaintiff was qualified to perform the job.

97. Plaintiff was subject to an adverse employment action, including, but not limited to constructive discharge.

98. Circumstances indicated that Plaintiff's association with her disabled mother was the reason for the adverse employment action.

99. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

100. Plaintiff's association with her disabled mother motivated Defendant's decision to take adverse actions, including constructive discharge, against Plaintiff.

101. The purported reason for Defendant's decision is pretextual.

102. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

103. As a result of Defendant's unlawful associational disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

104. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

105. Plaintiff engaged in activity protected by the ADA, *inter alia*, Plaintiff requested reasonable accommodations due to her mother's disability to Defendant and complained about the sudden change in stance regarding Plaintiff's ability to return to work.

106. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, constructive discharge.

107. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

108. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

109. Plaintiff engaged in activity protected by the PHRA, *inter alia*, Plaintiff requested reasonable accommodations due to her mother's disability to Defendant and complained about the sudden change in stance regarding Plaintiff's ability to return to work.

110. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, constructive discharge.

111. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT V – INTERFERENCE
## FAMILY AND MEDICAL LEAVE ACT LEAVE OF 1993, AS AMENDED

112. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

113. The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

114. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA leave to care for her mother's serious health condition.

115. Defendant acted in bad faith by interfering with Plaintiff's rights under the FMLA.

116. Defendant knowingly, intentionally, willfully and/or recklessly acted in disregard of the duty to grant Plaintiff's FMLA-related request for leave.

117. Defendant's aforementioned actions violate 29 U.S.C. § 2615(a)(1) of the Family and Medical Leave Act in that the employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

118. As a direct and proximate result of Defendant's unlawful interference with Plaintiff's rights under the FMLA, Plaintiff has been deprived of economic and non-economic benefits including, but not limited to lost wages, pain and suffering, mental anguish, humiliation, loss of fringe benefits, disruption of her personal life and loss of enjoyment of the ordinary pleasures of life.

119. Plaintiff demands judgment in her favor against Defendant for all available equitable relief including, but not limited to: unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

120. Plaintiff further demands judgment in her favor against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those

sums, as liquidated damages under § 2617(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the Family and Medical Leave Act of 1993.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

**COUNT VI – DISCRIMINATION/RETALIATION**
**THE FAMILY AND MEDICAL LEAVE ACT OF 1993**

121. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

122. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.

123. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA Leave to care for her mother's serious medical condition.

124. Plaintiff gave Defendant sufficient information to allow it to understand that she needed leave for FMLA-qualifying reasons.

125. The discrimination/retaliation occurred in the form of the continued implementation of a policy that discourages and interferes with Plaintiff's right to invoke her federally protected rights under the FMLA, *inter alia*, the requirement for Plaintiff to find a provider in Bulgaria and the subsequent translation of necessary medical certification in advance of beginning any FMLA leave.

126. As a result of Plaintiff's attempt to invoke her FMLA rights, by requesting and utilizing her FMLA rights, Defendant has retaliated against Plaintiff by constructively discharging her employment.

127. Defendant's motivation for discriminating/retaliating against Plaintiff was connected

causally to Plaintiff's attempt to take FMLA leave.

128. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

129. As a direct and proximate result of Defendant's constructive discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

130. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

131. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## COUNT VII – BREACH OF CONTRACT

132. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

133. Plaintiff and Defendant entered into an employment agreement.

134. Plaintiff's employment was subject to the policies and procedures within Defendant's 2023 Faculty Handbook.

135. Plaintiff performed all of her obligations under the employment agreement.

136. Defendant breached the contract by refusing to allow Plaintiff to take a leave of absence under the 2023 Faculty Handbook.

137. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VIII – PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE

138. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

139. Defendant promised to Plaintiff that she would be able to return to her teaching obligations in July 2024, following her leave of absence to provide care for her disabled mother.

140. Plaintiff reasonably relied on Defendant's promise to her detriment by proceeding with her leave of absence to provide care for her disabled mother.

141. Thereafter Defendant reneged on its promise and would not allow Plaintiff to return to her teaching obligations.

142. As a direct and proximate result of Plaintiff's reliance on Defendant's promise, Plaintiff has suffered damages.

143. Defendant is estopped from denying the enforceability of the promise made to Plaintiff

based on the doctrine of promissory estoppel

144. Plaintiff suffered damages as a result of Defendant's conduct.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Darina Lazarova, requests that the Court grant her the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA, the FMLA, the PHRA, breach of contract and detrimental reliance.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law,

equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: February 18, 2025     By:     */s/David M. Koller*
David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*