IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARINA LAZAROVA, **Plaintiff** | : No. 3:25cv290 |
| | : |
| | : (Judge Munley) |
| v. | : |
| | : |
| GEISINGER COMMONWEALTH SCHOOL OF MEDICINE, **Defendant** | : |

............................................................................................................

## MEMORANDUM

Plaintiff Darina Lazarova asserts claims against her former employer, Geisinger Commonwealth School of Medicine ("GCSOM") for associational disability discrimination and retaliation under the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, *et seq.* ("ADA") and the Pennsylvania Human Relations Act, 73 PA. STAT. §§ 951, *et seq.* ("PHRA"). She asserts that GCSOM also violated the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA") and breached a contract by failing to apply policies found in a faculty handbook.

Before the court is GCSOM's motion to dismiss the plaintiff's ADA/PHRA retaliation and breach of contract claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Having been fully briefed, this motion is ripe for disposition.

## Background

Lazarova was employed by GCSOM as an assistant professor of molecular and cellular biology for approximately 15 years.[1] (Doc. 1, Compl. ¶ 21). Plaintiff was born in Bulgaria, where her mother still resides. Id. ¶ 34. In May 2023, plaintiff's mother experienced a fall, likely due to a stroke. Id. ¶¶ 31–32. For two months, plaintiff arranged for individuals to care for her mother. Id. ¶ 35. Unfortunately, per the complaint, it quickly became evident that plaintiff's mother needed more constant and direct care than the initial caregivers could provide. Id. The assisted living arrangements that plaintiff made for her mother did not last. Id. ¶ 36.

In June 2023, Lazarova informed her department chairperson, John Arnott, and GCSOM's president, Julie Byerley, about her mother's disability. Id. ¶¶ 30, 37. Plaintiff requested an extended unpaid leave, beginning that October, so she could go to Bulgaria and provide care for her mother until more permanent assistance could be arranged. Id. ¶¶ 38–39. Plaintiff advised that she would finish her current teaching obligations. Id. ¶ 39.

---

[1] These brief background facts are derived from plaintiff's complaint. At this stage of the proceedings, the court must accept all factual allegations in the amended complaint as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

2

According to Lazarova, GCSOM's 2023 Faculty Handbook included written policies for extended leave, that is, for periods more than six months. Id. ¶ 40. Plaintiff advised her employer that she intended to return to work sooner if she was able to find permanent care for her mother. Id.

Lazarova also requested extended leave through the medical school's human resources ("HR") department. Id. ¶ 41. After some back-and-forth over using FMLA-protected leave, HR permitted the plaintiff to take extended unpaid leave under the faculty handbook policies. Id. ¶¶ 42–48.

Before leaving for Bulgaria, Lazarova met with Arnott, her direct supervisor. Id. ¶¶ 30, 49. Arnott advised that he would not schedule the plaintiff for any teaching obligations until July 2024. Id. ¶ 50. Plaintiff stated that she would be able to return before July 2024, which would allow her time to prepare for the summer term. Id. ¶ 51.

Lazarova subsequently went on extended unpaid leave from work to care for her mother in Bulgaria. Id. ¶ 52. Plaintiff then found permanent care for her mother in December 2023. Id. ¶ 53.

On December 12, 2023, Lazarova emailed Arnott to discuss return-to-work arrangements. Id. ¶ 54. Plaintiff did not hear back from Arnott for over one month. Id. ¶ 55. In the interim, plaintiff repeatedly contacted HR and Arnott's secretaries for a response. Id.

On January 15, 2024, Arnott responded to Lazarova's inquiries with Robert Konopke, an HR supervisor, copied on the email. Id. ¶¶ 56–57. Arnott advised Lazarova that her position would be terminated at the end of her leave in May 2024. Id. ¶ 58. In the email, Arnott cited Geisinger Health System's ("Geisinger") policies, which provide supervisors with discretion to terminate an employee if an employee takes an unpaid leave of absence for over 45 days.[2] Id. ¶ 59.

Lazarova alleges that she was emailed a copy of the Geisinger policies before her leave, but disputes that those policies applied to her. Id. ¶¶ 60–61. Rather, according to the plaintiff, her leave of absence from work was governed by the 2023 Faculty Handbook because she was employed by GCSOM and not by Geisinger directly. Id. ¶¶ 61, 63. Nonetheless, Konopke insisted that the plaintiff fell under Gesinger's policies. Id. ¶ 62. He advised plaintiff via email that she would remain in leave status until May 2024 when her position would be terminated. Id. ¶ 64.

---

[2] The complaint details historical issues between Lazarova and Arnott, the department chair and plaintiff's direct supervisor. According to Lazarova, she had filed a complaint against Arnott for harassment in April 2015. (Doc. 1, Compl. ¶ 24). As alleged, during a faculty meeting around that time, plaintiff expressed her ideas on improving the grant funding process. Id. ¶ 25. Arnott responded, ostensibly during the meeting, by calling them signs of "negativism." Id. ¶ 26. Arnott also called Lazarova a "complainer," and stated that she created a negative image at the medical school. Id. ¶ 27. At that time, Arnott also made comments to the plaintiff, in essence, that if she did not like GCSOM, she could leave and that she should be grateful she was still receiving a salary. Id. ¶ 28. GCSOM allegedly informed the plaintiff that her complaint against Arnott had been resolved internally. Id. ¶ 29. Lazarova, however, asserts that GCSOM did not properly address and correct Arnott's conduct. Id. Rather, GCSOM promoted him to department chair in 2018. Id. ¶ 29. He became plaintiff's direct supervisor at that time. Id. ¶ 30.

Konopke allegedly told Lazarova that she could apply to open positions at GCSOM before May 2024. Id. ¶ 65.  According to the plaintiff, GCSOM blocked plaintiff from her work email address, and she could not proceed as an internal applicant. Id. ¶ 65.  After plaintiff complained to Konopke, he advised the plaintiff that she could apply externally and inform the recruiters that she was an internal applicant. Id. ¶¶ 68–69.  Despite Konopke's statements, the recruiters informed the plaintiff during the application process that she did not follow proper protocol for an internal hire and could only apply with her work email address. Id. ¶¶ 69–72.  Rather than aid in unblocking plaintiff's access to her work email address, Konopke informed plaintiff that she could resign or wait to be terminated. Id. ¶ 73.

In February 2024, Lazarova filed an internal ethics complaint for her inability to apply for positions at GCSOM. Id. ¶ 74.  On February 19, 2024, plaintiff then resigned. Id. ¶ 75. She asserts that her resignation under such circumstances amounts to constructive discharge. Id. ¶ 76.

Based on the above allegations, Lazarova maintains eight (8) claims in her complaint under the ADA, FMLA, PHRA, and state common law.  Relevant here, in Counts III and IV, plaintiff alleges that GCSOM retaliated against her in violation of the ADA and PHRA by constructively discharging her after she: 1) requested reasonable accommodations due to her mother's disability; and 2) complained about the sudden change in stance regarding the ability to return to

work. Id. ¶¶ 104–07.  In Count VII, plaintiff asserts a state law claim for breach of contract due to GCSOM's refusal to allow plaintiff to take a leave of absence under the 2023 Faculty Handbook. Id. ¶¶ 132–37.  GCSOM responded to the complaint with the instant motion to dismiss Counts III, IV, and VII, (Doc. 7), which brings this case to its present posture.[3]

**Jurisdiction**

As the case is brought pursuant to the ADA and FMLA, the court has federal question jurisdiction. 28 U.S.C. § 1331.  The court has supplemental jurisdiction over plaintiff's PHRA and state common law claims. 28 U.S.C. § 1367(a).

**Standard of Review**

GCSOM has filed a motion to dismiss Lazarova's complaint under Rule 12(b)(6).  To survive a motion to dismiss for failure to state a claim, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P. 8(a)(2)).  This means that a complaint must contain

---

[3] Lazarova's complaint also asserted a state law claim for promissory estoppel/detrimental reliance in Count VIII based on GCSOM reneging on its promise to allow her to return to her teaching obligations in July 2024 following her leave of absence to care for her mother in Bulgaria. (Doc. 1, Compl. ¶¶ 138–44). GCSOM also moved to dismiss that claim. In her brief in opposition to the motion to dismiss, plaintiff indicated that she does not oppose dismissal of that claim. (Doc. 9 at 1). Consequently, the motion to dismiss will be granted as unopposed as to Count VIII. Plaintiff's claim for promissory estoppel will be dismissed with prejudice without any additional discussion.

6

sufficient factual matter, accepted as true, to state a claim for relief which is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when factual content is pled which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

    The court evaluates motions to dismiss using a three-step process.  The first step involves identifying the elements of each claim. Oldham v. Pennsylvania State Univ., 138 F.4th 731, 743 (3d Cir. 2025) (citation omitted).  The second step involves reviewing the operative pleading and disregarding any formulaic recitation of the elements of a claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual. See Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citations and quotation marks omitted).

    The third step evaluates the plausibility of the remaining allegations. Id. In evaluating plausibility of the plaintiff's allegations, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the

7

plaintiff, and draws all reasonable inferences in the plaintiff's favor. Id. (citations omitted).

**Analysis**

   **1. ADA/PHRA Retaliation Claims**

Lazarova's complaint asserts several ADA and PHRA claims related to her association with her mother, who is alleged to be a disabled person. Pursuant to Title I of the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "discriminate against a qualified individual on the basis of disability" includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). Under the PHRA, it is an unlawful discriminatory practice "[t]o exclude or otherwise deny equal jobs or benefits to a person because of the handicap or disability of an individual with whom the person is known to have a relationship or association." 43 PA. STAT. § 955(l).

In addition to her ADA and PHRA association discrimination claims, Lazarova alleges that GCSOM also violated these laws by retaliating against her.

8

The ADA antiretaliation statute provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful" by the statute. 42 U.S.C. § 12203. The PHRA contains an analogous provision. 43 PA. STAT. § 955(d).

Specifically, Lazarova asserts that she experienced illegal retaliation after she: 1) requested reasonable accommodations due to her mother's disability; and 2) complained about the sudden change in stance regarding the ability to return to work. (Doc. 1 ¶¶ 104–07). In moving to dismiss the association retaliation claims, GCSOM argues that it was not required to provide plaintiff with a reasonable accommodation related to her mother's disability, i.e., extended leave. Therefore, according to the defendant, any retaliation claim arising from plaintiff's alleged constructive discharge is not cognizable.

GCSOM is half right in its assessment of Lazarova's allegations. The ADA association provision, 42 U.S.C. § 12112(b)(4), "does not obligate employers to accommodate the schedule of an employee with a disabled relative[,]" like the reasonable accommodations provisions set forth at 42 U.S.C. § 12112(b)(5)(A)-(B). See Erdman v. Nationwide Ins. Co., 582 F.3d 500, 510 (3d Cir. 2009) ("Although refusal to 'mak[e] reasonable accommodations' may constitute illegal discrimination against a disabled *employee*, 42 U.S.C. § 12112(b)(5), the plain language of the ADA indicates that the accommodation requirement does not

9

extend to *relatives* of the disabled.") (emphasis in original) (further citations omitted). Consequently, Lazarova cannot assert ADA/PHRA retaliation claims based on defendant's alleged failure to reasonably accommodate plaintiff's extended leave from work due to her association with a disabled individual.[4]

On the other hand, Lazarova also asserts a separate protected activity, that is, complaining to GCSOM about her inability to apply for open positions after being advised that her position would be terminated. (Doc. 1, Compl. ¶¶ 63–74). As indicated just above, it is unlawful to exclude equal jobs and benefits to a qualified individual because of a known relationship with a disabled person. 42 U.S.C. § 12112(b)(4). Since these allegations can be traced back to plaintiff's ostensible association with a disabled individual and her complaints about GCSOM's treatment towards her after taking leave to care for her mother, plaintiff plausibly sets forth a different way the defendant retaliated against her. Defendant's motion to dismiss plaintiff's retaliation claims in Count III and Count IV will thus be denied.

### 2. Breach of Contract Claim Based on Faculty Handbook Policies

GCSOM also moves to dismiss Count VII of Lazarova's complaint arguing that her breach of contract claim fails as a matter of law. Specifically, GCSOM

---

[4] The PHRA is interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently. Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002) (citation omitted).

asserts that plaintiff's allegations cannot overcome the presumption that she was an at-will employee not under an employment contract.

In opposition to the motion to dismiss, Lazarova tacitly agrees that her allegations are deficient by devoting more argument to a request for leave to amend her breach of contract claim. (Doc. 9, Br. in Opp. at 9). Plaintiff asserts that she could append a copy of the 2023 Faculty Handbook and include additional facts alleging that the handbook created a contract of employment. Id. at 9–11 (listing additional facts that she would include in an amended complaint). Over GSCOM's objections, (Doc. 10 at 6–7), the court will permit Lazarova to file an amended breach of contract claim in lieu of ruling on the merits of GSCOM's motion to dismiss, see FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). However, plaintiff shall include a copy of the 2023 Faculty Handbook with her amended complaint in the event GCSOM will further its arguments that the handbook does not overcome the presumption of plaintiff's at-will employment in a second motion to dismiss.

**Conclusion**

For the reasons set forth above, GCSOM's motion to dismiss will be granted in part and denied in part. Specifically, the motion will be granted as to plaintiff's promissory estoppel claim in Count VIII of the complaint. Count VIII will be dismissed with prejudice. Otherwise, the motion will be denied. Plaintiff will

be afforded fourteen (14) days to file an amended complaint regarding the breach of contract claim in Count VII. An appropriate order follows.

Date: 11/25/25

JUDGE JULIA K. MUNLEY
United States District Court